## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ROBERT CHENCINSKI, | ) | |
| # B75443, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 19−cv−485−NJR |
| | ) | |
| DR. PERCY MYERS, | ) | |
| WEXFORD HEALTH SOURCES, INC., | ) | |
| WARDEN SCOTT THOMPSON, and | ) | |
| CHAPLIN ARNOLD, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Robert Chencinski, an inmate who is currently incarcerated in the Illinois Department of Corrections ("IDOC") at Pinckneyville Correctional Center ("Pinckneyville"), brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff seeks monetary and injunctive relief.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

**The Complaint**

In his Complaint, Plaintiff makes the following allegations: Plaintiff arrived at Pinckneyville on December 4, 2018. (Doc. 1, p. 8). Plaintiff had previously been diagnosed with blepharospasm, a chronic neurological condition causing involuntary muscle spasms around the eye, which causes Plaintiff chronic pain and problems with depth perception. (*Id.*, pp, 8-9). The condition had previously been treated with injections of Botox (botulinum toxin) every 90 days, although the injections lose effectiveness after 70-75 days. (*Id.*, p. 9). Plaintiff was due for injections on February 13, 2019. (*Id.*).

On January 31, 2019, Plaintiff was seen by Defendant Dr. Myers, who told him that he would see a specialist at the end of February for his condition. (*Id.*, p. 10). Despite Plaintiff's statements that the delay in treatment would cause chronic pain and injuries, Myers chose not to move the treatments up and refused to give him a low-gallery or low-bunk permit. (*Id.*). Three other inmates with the same condition were given such permits due to the danger of injuries. (*Id.*, p. 11).

Sometime in late February 2019, Plaintiff fell getting up on a top bunk due to "misjudging the sink" and broke two of his teeth. (*Id.*, p. 10).

On February 28, 2019, Plaintiff and another inmate with the same blepharospasm condition were taken to see an outside specialist, where he received his treatment. (*Id.*, pp. 10-11). Plaintiff alleges that he was forced to wait for this appointment pursuant to a policy "to save money by sending two (2) inmates at the same time to the same outside specialist." (*Id.*, p. 13). Plaintiff spoke to Myers on his return to prison about his injuries and going back to the specialist in 90 days, though Myers declined to speak with him about it. (*Id.*, p. 10).

On March 27, 2019, Plaintiff was seen by a dentist, who informed Plaintiff he would need two crowns for his broken teeth, but that IDOC and Wexford policy is not to do crowns. (*Id.*, p. 11).

Beginning in February 2019, Plaintiff asked to speak with Defendant Chaplain Arnold about the Catholic observance of Lent and how the associated dietary restrictions are handled. (*Id.*). His requests went unanswered, and the dietary supervisors told him that meat substitutes on Fridays during Lent were only given at the direction of Arnold. (*Id.*). A grievance on the issue drew a response from Arnold that it was the dietary supervisors were to provide a substitute for meat on those Fridays. *Id.* Further, Plaintiff was denied ash markings on Ash Wednesday, despite requests for observance of that tradition. (*Id.*, pp. 11-12). Plaintiff was denied any appropriate meat substitute at a number of Friday meals during Lent. (*Id.,* pp. 12-13).

Based on the allegations in the Complaint, the Court finds it convenient to divide the *pro se* action into the following four counts:

| | |
|---|---|
| **Count 1:** | Eighth Amendment claim against Myers and Wexford for deliberate indifference to a serious medical need regarding his neurological condition; |
| **Count 2:** | Eighth Amendment claim against Wexford and IDOC for deliberate indifference to a serious medical need regarding his dental care; |
| **Count 3:** | Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and Rehabilitation Act, 29 U.S.C. §§ 794-94e.1 claim against IDOC for failure to provide a low-gallery and low-bunk permit; and |
| **Count 4:** | First Amendment claim against Thompson, IDOC and Arnold for denial of ashes and refusal to accommodate Plaintiff's religious dietary needs. |

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the**

**Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[1]

<u>Severance</u>

In *George v. Smith*, 507 F.3d 605 (7th Cir. 2007), the Seventh Circuit emphasized that unrelated claims against different defendants belong in separate lawsuits. *George*, 507 F.3d at 607 (citing 28 U.S.C. § 1915(b)). The Seventh Circuit has warned district courts not to allow inmates "to flout the rules for joining claims and defendants, see FED. R. CIV. P. 18, 20, or to circumvent the Prison Litigation Reform Act's fee requirements by combining multiple lawsuits into a single complaint." *Owens v. Godinez*, 860 F.3d 434, 436 (7th Cir. 2017). When deciding whether to sever claims, the Court considers Federal Rules of Civil Procedure 20 and 18.

Rule 20 prohibits a plaintiff from asserting unrelated claims against different defendants or sets of defendants in the same lawsuit. Under Rule 20, multiple defendants may not be joined in a single action unless the plaintiff asserts at least one claim to relief against each respondent that arises out of the same transaction or occurrence or series of transactions or occurrences and presents a question of law or fact common to all. *George*, 507 F.3d at 607; 3A *Moore's Federal Practice* § 20.06, at 2036–45 (2d ed.1978).

Rule 18 allows a party to join unrelated claims against defendants in a lawsuit. However, this rule applies only after the requirements for joinder of parties have been satisfied under Rule 20. *Intercon Research Ass'n, Ltd. v. Dresser Ind., Inc.*, 696 F.2d 53, 57 (7th Cir. 1983) (citing 7 Charles Alan Wright et al., *Federal Practice & Procedure*). Thus, the "core group" of allowable defendants must be determined under Rule 20 before a plaintiff may join additional unrelated

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

claims against one or more of those defendants under Rule 18. There is no allowance, under either Rule 18 or Rule 20, for a party to join claims involving any defendant outside the "core group" identified under Rule 20.

In this case, Plaintiff asserts different claims against various defendants for two wholly separate transactions or series of transactions: (1) Claims pertaining to his medical and dental care (Counts 1-3), directed against Defendants Myers, Wexford and IDOC; and (2) Claim pertaining to burdens placed on Plaintiff's religious observance of Lent (Count 4) against Defendant Arnold. Plaintiff states that his broken teeth were the result of him "misjudging the sink" while trying to get on a top bunk; given Plaintiff's allegations that his neurological condition compromises his depth perception, the need for a low-gallery and low-bunk permit and the need for dental care after a fall trying to get into a top bunk are reasonably considered related transactions or occurrences and thus properly joined.[2]

Although the first three counts will proceed together in this action, Count 4 must be severed. The alleged burdens placed on Plaintiff's exercise of his religion bear no relationship whatsoever to either his medical or dental needs. Although Warden Thompson is a party to all claims, he is in the case solely in his official capacity for purposes of executing any injunctive relief which may be granted and is therefore outside the "core group" of Defendants in Counts 1 through 3. Accordingly, Count 4 is not properly joined and must be severed into a new action.

---

[2] The Court notes that if it subsequently determines that a claim has been misjoined, such claim may be severed at any time. FED. R. CIV. P. 21. Moreover, the Court has broad discretion under Rule 21 to sever even properly-joined claims, *see UWM Student Association v. Lovell*, 888 F.3d 854, 863 (7th Cir. 2018); *Vermillion v. Levenhagen*, 604 F. App'x. 508, 513 (7th Cir. 2015), and under Rule 42(b) to separate claims for trial. *Houseman v. U.S. Aviation Underwriters*, 171 F.3d 1117, 1121 (7th Cir.1999). Thus, as the case progresses, the Court remains open to reconsidering the issue *sua sponte* or on motion.

Therefore, as set forth above, Counts 1-3 directed against Defendants Myers, Wexford, Thompson (in his official capacity) and IDOC shall remain in this action, and the merits of these claims will be reviewed in this Order. The Court shall sever Count 4, directed against Arnold and Thompson (in his official capacity), into a separate action. This separate action will have a newly assigned case number and shall undergo preliminary review pursuant to Section 1915A after the new case number and judge assignments have been made.

## Merits Review

### Count 1

Count 1 adequately states a claim for relief against Myers and Wexford. The Eighth Amendment prohibits the wanton and unnecessary infliction of pain on incarcerated persons. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). This can include the denial of necessary medical care. *Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012). An inmate pursuing an Eighth Amendment claim must establish: (1) a serious medical condition (objective element); and (2) an official's deliberate indifference to that condition (subjective element). *Id.*

Plaintiff received appropriate medical treatment for his blepharospasm. The question is whether the two-week delay between when he contends he should have been treated (February 13) and when he actually received it (February 28) amounts to a violation of Plaintiff's constitutional rights. A delay in treatment of a serious medical condition can be the basis of an Eighth Amendment claim, and "the length of delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment." *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) (citations omitted). "Even a few days' delay in addressing a severely painful but readily treatable condition suffices to state a claim of deliberate indifference." *Smith v. Knox Cty. Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012).

At this point, there is at least a plausible claim that the delay in treatment caused unnecessary suffering, that Myers was aware that the delay would likely cause undue pain and discomfort, and that he disregarded that likelihood. Similarly, Plaintiff has adequately stated a claim against Wexford for the delay in treatment. A corporate entity providing essential services at a prison violates an inmate's constitutional rights "if it maintains a policy that sanctions the maintenance of prison conditions that infringe upon the constitutional rights of the prisoners." *Woodward v. Corr. Med. Servs. of Illinois, Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (citations omitted). Such a policy must be "the moving force behind the constitutional violation" to give rise to Section 1983 liability. *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002) (*quoting Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978)). Here, Plaintiff has alleged that Wexford has a policy of saving money by delaying outside medical treatment in order to make a single trip with multiple prisoners, and that this was the cause of his delay in treatment. Plaintiff has therefore stated a claim for Count 1 against both Myers and Wexford.

## Count 2

The same principles underpinning Eighth Amendment claims for deliberate indifference to a serious medical need apply equally to dental care. *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010). Plaintiff adequately alleges that Wexford was deliberately indifferent to his need for dental care— his broken teeth allegedly require crowns, and Wexford's policy of not performing such procedures is sufficient to state a Section 1983 claim.

The claim must be dismissed, however, as to IDOC. Although Plaintiff claims that the no-crowns policy was both a Wexford and IDOC policy, he cannot maintain a civil rights claim for damages against IDOC because it is a state government agency. The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will*

*v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001) (Eleventh Amendment bars suits against states in federal court for money damages); *Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 788 (7th Cir. 1995) (state Department of Corrections is immune from suit by virtue of Eleventh Amendment). As such, Count 2 is dismissed without prejudice as to IDOC.

### Count 3

Plaintiff adequately states a claim against IDOC under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.,* and the Rehabilitation Act, 29 U.S.C. §§ 794-94e.1 According to the ADA, "no qualified individual with a disability shall, because of that disability ... be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (2006). The Rehabilitation Act likewise prohibits discrimination against qualified individuals based on a physical or mental disability. See 29 U.S.C. §§ 794-94e. However, the Rehabilitation Act includes as an additional requirement the receipt of federal funds, which all states accept for their prisons. *Cutter v. Wilkinson*, 544 U.S. 709, 716 n. 4 (2005). Discrimination under both includes the failure to accommodate a disability. *Jaros v. Illinois Dept. of Corrections*, 684 F.3d 667, 672 (7th Cir. 2012) (citation omitted).

In *Jaros*, the Seventh Circuit construed the prison's failure to provide accommodations to allow a disabled prisoner to access meals and showers as a denial of access to a "program or activity" which stated a claim under the ADA and Rehabilitation Act. If meals and showers are considered a "program or activity" which must be accessible to disabled inmates under these statutes, then the basic need for a safely accessible bed may also be viewed as such. As such, Plaintiff's ADA/RA claim against IDOC for failure to provide him with a low-bunk permit will proceed.

**Pending Motions**

**Injunctions**

Plaintiff has separately filed a Motion for Preliminary Injunction related to his medical and dental issues designated as Counts 1-3 above (Doc. 4) and a Motion for Permanent Injunction regarding the religious issues designated as Count 4 (Doc. 5). The latter will be filed in the severed case and denied as moot in the present action.

To obtain a preliminary injunction under Rule 65(a) of the Federal Rules of Civil Procedure, Plaintiff must demonstrate that (1) his underlying case has some likelihood of success on the merits; (2) no adequate remedy at law exists; and (3) he will suffer irreparable harm without the relief. *Woods v. Buss,* 496 F.3d 620, 622 (7th Cir. 2007). A preliminary injunction is an "extraordinary and drastic remedy" for which there must be a "clear showing" that a plaintiff is entitled to relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

Plaintiff's Motion only speaks to the legal concept that delay in medical treatment may be a basis for a Section 1983 claim, and rehashes the factual allegations outlined above. However, he has submitted a proposed Order suggesting that he seeks an order requiring installation of two crowns, a low-gallery low-bunk permit, and "no more delaying of treatment (90 days)[.]"

The Prison Litigation Reform Act provides that a preliminary injunction must be "narrowly drawn, extend no further than necessary to correct the harm ...," and "be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). The Seventh Circuit has described injunctions like the one sought here, requiring an affirmative act by the defendant, as a mandatory preliminary injunction. *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997). Mandatory injunctions are "cautiously viewed and sparingly issued," since they require the court to command a defendant to take a particular action. *Id*. (*citing Jordan v. Wolke*, 593 F.2d 772, 774

(7th Cir. 1978)).

To the extent Plaintiff is seeking an order prohibiting a delay in his injections, such a request is premature. Plaintiff gives no facts to indicate that any future Botox treatments are likely to be delayed.

As to the other requested relief, Plaintiff's request for a preliminary injunction will remain pending until Defendants have been served. Defendants will respond to the Motion for Preliminary Injunction within **14 days** of service of the pleadings in this case, at which point the Court will determine the need for a hearing on the Motion for Preliminary Injunction.

### Counsel

Plaintiff has also filed a Motion for Appointment of Counsel (Doc. 3). There is no constitutional or statutory right to appointment of counsel in federal civil cases. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010). Federal District Courts have discretion under 28 U.S.C. § 1915(e)(1) to request counsel to assist pro se litigants. *Id.* When presented with a request to appoint counsel, the Court must consider: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself [.]" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007).

Plaintiff alleges that he has contacted several attorneys without any response. Concerning the second step of the inquiry, "the difficulty of the case is considered against the plaintiff's litigation capabilities, and those capabilities are examined in light of the challenges specific to the case at hand." *Id.* at 655. In this case, Plaintiff's claims do not appear to be that factually complex and Plaintiff's grasp of the legalities appears to be quite good. Plaintiff's Complaint and Motions adequately articulate his claims, and based on this ability, this Court concludes that Plaintiff

appears to be competent to litigate his case on his own at this time. Future developments in this case may alter the Court's decision, but at this early stage in the litigation, Plaintiff's motion for appointment of counsel will be **DENIED** without prejudice. Plaintiff may choose to re-file this motion at a later stage in the litigation.

### Disposition

**IT IS ORDERED** that **COUNT 4** is **SEVERED** into a new case against **ARNOLD and SCOTT THOMPSON (in his official capacity)**. In the new case, the Clerk is **DIRECTED** to file the following documents:

- The Complaint (Doc. 1);
- Plaintiff's Motion for Recruitment of Counsel (Doc. 3);
- Plaintiff's Application for Leave to Proceed *in forma pauperis* (Doc. 2);
- Plaintiff's Motion for Permanent Injunction (Doc. 5) and
- This Memorandum and Order (Doc. 8).

**IT IS FURTHER ORDERED** that the **only claims remaining in this action are COUNTS 1, 2, and 3 which are directed against MYERS, WEXFORD HEALTH SOURCES, INC, SCOTT THOMPSON (in his official capacity) and IDOC**. The Clerk of Court is **DIRECTED** to terminate **ARNOLD** as a defendant in this action. `

**IT IS FURTHER ORDERED** that Count 1 survives threshold review against Myers, Wexford and Thompson (in his official capacity only), that Count 2 survives as to Wexford and Thompson (in his official capacity only) and Count 3 survives as to IDOC and Thompson (in his official capacity only). Count 2 is **DISMISSED** with prejudice as to IDOC.

The Clerk of Court shall prepare for Defendants Myers, Wexford, Thompson and IDOC: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons

(Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on the Unknown (John Doe and Jane Doe) Defendants until such time as Plaintiff has identified them by name in a properly filed amended complaint. Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

**IT IS FURTHER ORDERED** that, if a Defendant can no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with Defendant's current work address, or, if not known, Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

In order to assist the Court in its resolution of the Motion for Preliminary Injunction, Defendants are **FURTHER ORDERED** to file a response to the Motion within 21 days of the date of service of the summons.

**IT IS FURTHER ORDERED** that this entire matter be **REFERRED** to a United States Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(3) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral*.

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  May 10, 2019**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

<u>**Notice to Plaintiff**</u>

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, in order to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. The plaintiff need not submit any evidence to the court at this time, unless otherwise directed by the Court.