IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROBERT CHENCINSKI, #B75443, <br><br> Plaintiff, <br><br> v. <br><br> PERCY MYERS, WEXFORD HEALTH SOURCES, INC., SCOTT THOMPSON, and ILLINOIS DEPARTMENT OF CORRECTIONS, <br><br> Defendants. | Case No. 19-cv-00485-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Robert Chencinski, an inmate of the Illinois Department of Corrections ("IDOC"), commenced this action by filing a Complaint pursuant to 42 U.S.C. § 1983 for the deprivation of his constitutional rights. (Doc. 1). Along with the Complaint, Chencinski filed a Motion for Preliminary Injunction. (Doc. 4).

The Court conducted a preliminary review of the Complaint, under 28 U.S.C. §1915A, and issued a Merit Review Order setting forth the following claims: an Eighth Amendment deliberate indifference claim against Dr. Myers and Wexford regarding treatment of Chencinski's neurological condition (Count 1); an Eighth Amendment deliberate indifference claim against Wexford regarding dental treatment for his broken teeth (Count 2); Americans with Disabilities Act ("ADA") and Rehabilitation Act ("RA") claim against IDOC for failing to provide a low gallery and low bunk permit (Count 3); and a First Amendment free exercise of religion claim (Count 4). (Doc. 8, p. 3). In the Merit Review Order, the Court severed Count

4 into a new case. The Court also denied Chencinski's request for a preliminary injunction to prohibit Defendants from delaying his Botox injection treatments as premature, because Chencinski did not provide facts indicating that future Botox treatments would be delayed. (*Id.* at p. 10). The Court deferred ruling on the motion for a preliminary injunction regarding Chencinski's request for two crowns, a low gallery permit, and a low bunk permit. (*Id.* at pp. 9-10). Defendants filed responses to the Motion for Preliminary Injunction on October 30, 2019, and November 15, 2019 (Docs. 38, 40), and Chencinski filed a reply on November 26, 2019. (Doc. 41). The Court held a hearing on the Motion on February 25, 2020, and heard testimony from Plaintiff Chencinski, Dr. Myers, medical director at Pinckneyville, and Dr. Chapman, dentist at Pinckneyville.

## BACKGROUND

In the Complaint, Chencinski claims that he has been diagnosed with blepharospasm, a chronic neurological condition causing involuntary muscle spasms around the eye, which causes him chronic pain, problems with depth perception, and facial contortions. (Doc. 1, p. 8-9). Prior to arriving at Pinckneyville Correctional Center ("Pinckneyville"), he was treated with injections of Botox (botulinum toxin) every 90 days, although the injections lose effectiveness for him after 70-75 days. (*Id.* at p. 9). When he arrived at Pinckneyville from Stateville Correctional Center in December 2018, his next injection treatment was due February 13, 2019. (*Id.*). Dr. Myers did not scheduled Chencinski to receive his injections with an outside specialist until February 28, 2019, however, fifteen days past the prescribed treatment date. (*Id.* at p. 10). Dr. Myers also denied Chencinski's request for a low gallery and a low bunk permit. (*Id.*). Because his injections were delayed, he suffered from uncontrollable spasms, chronic pain, sleeplessness, and problems with his depth perception. (*Id.* at p. 10). In

late February 2019, Chencinski fell climbing up on a top bunk, injuring his elbow, head, neck, and back and also breaking two of his teeth. (*Id.* at p. 10; Doc. 4, p. 2). Because Wexford charges a $5.00 co-pay for Nurse Sick Call ("NSC"), Chencinski wrote two grievances regarding his injuries instead of an NSC request. Chencinski claims that because of Wexford's policy of withholding healthcare to save money, he was forced to wait to see an ophthalmologist for his injections until he could be scheduled to go with another inmate who also had an appointment to see a specialist. (*Id.* at p. 11).

When he saw the dentist on March 27, 2019, the dentist told Chencinski that he needed two crowns for his damaged teeth, but IDOC and Wexford policy is not to do crowns. (Doc. 1, p. 11; Doc. 4, p. 2). At the time of filing this action, he was on a four to five month long waitlist to receive fillings, and his unrepaired broken teeth were causing him to bite holes on the inside of his mouth (Doc. 4, p. 3).

In their response, Defendants argue that a preliminary injunction is not warranted. First, Chencinski cannot demonstrate that he is likely to succeed on the merits of his claims of deliberate indifference regarding medical and dental care and his ADA and RA claim for denial of a low gallery and low bunk permit. (Doc. 38, p. 6; Doc. 40, p. 3). Upon Chencinski's arrival at Pinckneyville in December 2018, Dr. Myers reviewed his chart and submitted a referral to Collegial Review for Botox injection treatments of Chencinski's blepharospasm condition. (Doc. 38, p. 6; Doc. 40, p. 4). The referral was approved, and an appointment was scheduled for Chencinski to receive treatment at Marion Eye Center on February 28, 2019. (Doc. 38, p. 6; Doc. 40, p. 4). Dr. Myers states that he does not have any involvement in scheduling patients for appointments at Pinckneyville or at outside facilities. (Doc. 38, p. 6). Furthermore, "[t]here is nothing to suggest that [Chencinski's] Botox appointment needed to

be done at exactly 90-day intervals." (*Id.*). Chencinski's ophthalmologist, Dr. Umana, has stated in a declaration submitted by Chencinski that Botox injections can last anywhere from three to four months. (Doc. 38, p. 6; Doc. 40, p. 5) (citing Doc. 4, pp. 5-6). Dr. Myers has continually referred Chencinski for Collegial Review for Botox injections, and Chencinski has received injections at Marion Eye Center in May, August, and November 2019. (Doc. 38, pp. 6-7; Doc. 40, p. 4). Chencinski's neurological condition has been consistently treated by the medical doctor at Pinckneyville and a trained specialist. (Doc. 40, p. 5). Although Chencinski states that the injections "only hold me about 70-75 days," he is not a medical professional, and at each appointment the specialist notes when the next treatment should be received. (*Id.*). Defendants state that Chencinski's "desire to receive treatments immediately upon request" is better understood as a difference of opinion on how to be treated, not a constitutional violation. (*Id.* at p. 6).

Furthermore, although Chencinski states he has chronic pain due to his condition, Defendants argue that the medical records from the appointment with Dr. Umana on February 28, 2019, notes that Chencinski declined the presence of flashes, floaters, diplopia, and pain. (Doc. 38, p. 7). During his appointment with Dr. Umana on May 23, 2019, Chencinski reported pain with spasms, but Dr. Umana did not recommend pain medication, only additional injections in three months. (*Id.*). Chencinski also has not reported pain through NSC. (*Id.* at p. 8). Other than filing two grievances, there is no record of his alleged fall in late February or requests for treatment of the resulting injuries. (Doc. 38, pp. 8, 13; Doc. 40, p. 9). Chencinski did see the dentist for his broken teeth, but did not report falling from his bed. (Doc. 38, p. 13). Finally, it is not even clear whether Chencinski fell before or after receiving his first Botox treatment in February, as he states he fell in "late February."

(Doc. 40, p. 9; Doc. 4, p. 2). His condition has been treated effectively and appropriately by Defendants. (Doc. 40, p. 5).

Chencinski also cannot demonstrate a likelihood on the merits of his claim against Wexford for deliberate indifference due to a policy of delaying medical treatment in order to save money. Wexford argues that the policy to charge a $5.00 co-pay was established by Illinois statute and implemented by IDOC, not Wexford. (Doc. 38, p. 9). There is not a co-pay charged for emergencies, and Wexford disputes Chencinski's assertion that an inmate must see a nurse three times before seeing a doctor. (Doc. 38, pp. 9, 13; Doc. 40, p. 11). Wexford states that there is an IDOC policy that if an inmate is seen by NSC three times for the same condition in a 30 day period, then the inmate must be referred to a physician. (Doc. 38, p. 9). A nurse can refer an inmate to a physician at any time, however, if the nurse believes it is medically necessary. Additionally, an inmate can request emergency medical treatment by medical staff at any time. (Doc. 38, p. 10). Because Wexford pays the same amount for Chencinski to see an outside specialist no matter the date of the appointment, Wexford refutes Chencinski's claim that he was delayed treatment by fifteen days in order to save money. (*Id.*). Wexford argues that Chencinski offers no evidence to support his claim that the delay in scheduling the ophthalmology appointment was due to a Wexford policy, and it is possible that the alleged delay in scheduling was due to another reason, such as the availability of appointments at the ophthalmology office. (*Id.*).

Defendants further argue that Chencinski cannot show deliberate indifference due to a policy of not replacing or providing dental crowns. (Doc. 38, p. 11; Doc. 40, p. 6). Dentist Dr. Chapman saw Chencinski for his broken teeth on March 27, 2019, and patched the teeth with temporary medicated fillings. (Doc. 38, p. 10). On August 28, 2019, Dr. Chapman gave

Chencinski permanent fillings. (*Id.* at p. 11). Chencinski saw Dr. Chapman again on September 4, 2019, because one of his fillings fell out of his tooth, and he gave Chencinski a new filling on September 16, 2019. (*Id.*). Chencinski has not made any complaints regarding the repaired teeth since this last procedure. (*Id.*). Dr. Chapman made the determination that Chencinski's teeth could be saved with large fillings in lieu of crowns, and this determination does not demonstrate deliberate indifference. (Doc. 38, p. 11; Doc. 40, p. 7). As with his neurological condition, Chencinski's dental needs have been consistently evaluated and treated. (Doc. 40, p. 7).

As to the claim that Chencinski has been denied low gallery and low bunk permits in violation of the ADA and RA, Chencinski was evaluated by Dr. Myers, who determined that he does not qualify for the permits because he is not physically challenged and has good visual acuity and navigational skills. (Doc. 38, pp. 12-13; Doc. 40, p. 9). Chencinski claims that he requested low gallery and low bunk permits from Dr. Myers on January 31, 2019, but Defendants argue that there is no record of the request until an appointment with Dr. Myers on Mary 23, 2019. (Doc. 38, p. 8; Doc. 40, p. 9). On August 16, 2019, Chencinski had an appointment with Dr. Myers, following his ophthalmology appointment, and there is no indication that he requested to be re-evaluated for low gallery and low bunk permits at that visit. (Doc. 38, p. 13). Chencinski has also not alleged that he has fallen since his fall in late February, several months ago. (Doc. 38, p. 8; Doc. 40, p. 11). Dr. Myers's medical notes from the appointment in May 2019 state that Chencinski has great uncorrected vision and that there were no complaints of visual problems and no loss of visual acuity. Dr. Myers observed Chencinski walking into a crowded room full of chairs and Chencinski was able to enter the room, zig zag around the room until he came to an empty chair. Chencinski was able to pivot

and sit down. (Doc. 38, p. 9). Based on his skill, knowledge, experience, and training, Dr. Myers determined that Chencinski does not qualify for a low gallery or a low bunk permit. (*Id.*). Defendants state that Chencinski's claims that he has problems with depth perception and misjudging items have not been substantiated. (Doc. 40, p. 9). Although Chencinski's diagnosis of blepharospasm may qualify him as an individual with a disability, he has not shown that there has been any denial of access to a program or activity because of that disability. (*Id.*).

Second, Defendants argue that Chencinski cannot show that he is facing irreparable harm from his dental condition or lack of a low gallery or low bunk permit. (Doc. 38, p. 12; Doc. 40, p. 10). Dr. Chapman has stated that ideally Chencinski's teeth should be crowned once he leaves IDOC custody, however, another solution is to pack a large filling on Chencinski's teeth to ensure no further damage is done. (Doc. 40, p. 10). While cast crowns are unavailable, Chencinski can receive stainless steel crowns that must be ordered. (Doc. 38, p. 12). Because Chencinski currently has not complained about his teeth, Dr. Chapman has determined that no additional treatment is needed. (Doc. 38, p. 12; Doc. 40, p. 11). Defendants again state that Chencinski has never requested an emergency team for a fall, despite claiming he suffered serious injuries in his grievance, and has not alleged that he has fallen since February 2019. (Doc. 40, p. 11). The medical records indicate that Chencinski's requests for treatment have been answered and alleviated, and he continues to be seen and treated by medical staff for both his dental needs and neurological condition. (Doc. 40, p. 11).

In his reply, Chencinski argues that he will succeed on the merits of his claims because a delay in treatment that causes unnecessary pain is actionable. (Doc. 41, p. 44). Dr. Myers was aware of the risk of injury if he did not receive his injections on time, but delayed his

treatment by not changing the appointment date. (*Id.*). Wexford delayed his treatment by waiting until another inmate was also scheduled to see a specialist so that two inmates could be taken at the same time, saving money. (*Id.*). Chencinski states that he continues to fall from his top bunk, and so, he is still in need of low gallery and low bunk permits. Additionally, Wexford's policy of not allowing inmates to receive crowns is unconstitutional. (*Id.*). The fillings he received were only a temporary fix and one filling fell out less than 24 hours after the initial procedure. (*Id.* at p. 43). After the filling was replaced, he was instructed not to eat anything hard or chew by the fillings. He was also told to have the teeth crowned when he was released from custody. (*Id.*). Without a preliminary injunction, he will continue to suffer injuries from falling and he will continue to lose his fillings. (*Id.*). Finally, Chencinski states that Defendants will not suffer any harm by giving him proper dental care and ADA accommodation, and so the Court should grant him a preliminary injunction. (*Id.* at p. 45).

## ANALYSIS

A preliminary injunction is an "extraordinary and drastic remedy" for which there must be a "clear showing" that a plaintiff is entitled to relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A Charles Alan Wright, Arthur R Miller, & Mary Kay Kane, Federal Practice and Procedure §2948 (5th ed. 1995)). The purpose of such an injunction is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). A plaintiff has the burden of demonstrating:

- a reasonable likelihood of success on the merits;
- no adequate remedy at law; and
- irreparable harm absent the injunction.

*Planned Parenthood v. Comm'r of Ind. State Dep't Health*, 699 F.3d 962, 972 (7th Cir. 2012).

As to the first hurdle, the Court must determine whether "plaintiff has any likelihood

of success—in other words, a greater than negligible chance of winning." *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002). Once a plaintiff has met his burden, the Court must weigh "the balance of harm to the parties if the injunction is granted or denied and also evaluate the effect of an injunction on the public interest." *Id.*; *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013). "This equitable balancing proceeds on a sliding-scale analysis; the greater the likelihood of success of the merits, the less heavily the balance of harms must tip in the moving party's favor." *Korte*, 735 F.3d at 665. In addition, the Prison Litigation Reform Act provides that a preliminary injunction must be "narrowly drawn, extend no further than necessary to correct the harm . . . ," and "be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). Finally, pursuant to Federal Rule of Civil Procedure 65(d)(2), a preliminary injunction would bind only the parties, their officers or agents, or persons in active concert with the parties or their agents.

## DISCUSSION

At the hearing, Chencinski testified that he does not experience double vision, flashes, and floaters, but that his vision is impaired and he has depth perception issues. When he was assessed for low bunk and low gallery permits on May 23, 2019, Dr. Myers failed to give him an eye exam or vision test. Chencinski stated he injured his elbow in November and was examined by a nurse. He fell again from his top bunk on December 2, 2019, injuring his calf. Because of injuries to his calf, he was given a crutch and a temporary low bunk permit that expired on February 3, 2020. (*See* Doc. 59-1, p. 61). Although the permit has expired, he still currently assigned to a low bunk. Chencinski also testified that he sees the outside ophthalmologist approximately every 90 days and that the nurses at the ophthalmology office check his vision during each visit. Chencinski stated he believed was scheduled for

another appointment to receive injections the same week as the hearing. (*See* Doc. 59-1, p. 16). Chencinski stated that in January 2020 he met with an optometrist at Pinckneyville, and they discussed changing his injections to every 60 days due to the severity of his condition. (*See* Doc. 59-1, p. 21). Dr. Myers testified that following an appointment with the outside ophthalmologist on May 23, 2019, Dr. Myers notated in the medical record that Chencinski stated "he is able to see ok." (*See* Doc. 3801, p. 13). Dr. Myers further testified that, based on the medical records from the ophthalmologist's office and from his own observation, Chencinski did not have a medical need for a low gallery or a low bunk permit.

As to his dental care, Chencinski testified that since the repair of his filling on September 16, 2019, he has not had any dental pain and the fillings have not needed further repair. He stated that he is experiencing sensitivity with one of the damaged teeth that has a filling, tooth number 12. Dr. Chapman examined him on January 16, 2020, and ordered an x-ray of tooth number 12. Dr. Chapman testified that the x-ray showed that the filling was intact. He observed gum recession and so advised Chencinski to use sensitive toothpaste and reviewed proper brushing instructions. Dr. Chapman also stated that, while ideally the teeth needed to be crowned, fillings can provide permanent relief if well taken care of by a patient.

Based on the written submissions and testimony presented, the Court finds that Chencinski has not made a clear showing of immediate and irreparable injury that will result without a preliminary injunction. *See Wright v. Miller*, 561 F. App'x 551, 554 (7th Cir. 2014). Although Chencinski has been denied permanent low bunk and low gallery permits and dental crowns, he continues to be regularly treated by medical and dental staff at Pinckneyville and an outside ophthalmologist. Chencinski currently is assigned to a low bunk and has had no further complaints regarding his repaired teeth since his latest dental

appointment in January. Chencinski's claim that fillings are only a temporary solution does not demonstrate how he will suffer irreparable harm if he is not granted crowns. Furthermore, Chencinski stated he needed the low bunk and low gallery permits as a precautionary measure. His argument that he could be reassigned to a top bunk at any time without a permit, and, if reassigned, he could fall again fails to articulate the specific or imminent threat to safety that is necessary for a preliminary injunction. Therefore, Chencinski has not made the clear showing that is necessary to warrant the drastic remedy of a preliminary injunction at this time.

## Conclusion

For these reasons, Chencinski's motion for preliminary injunction (Doc. 4) is **DENIED**.

**IT IS SO ORDERED.**

**DATED: February 27, 2020**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**