## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

ROBERT CHENCINSKI,
#B75443,

          Plaintiff,

v.

PERCY MYERS,
WEXFORD HEALTH SOURCES, INC.,
SCOTT THOMPSON, and
ILLINOIS DEPARTMENT OF
CORRECTIONS,

          Defendants.

Case No. 19-cv-00485-NJR

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Robert Chencinski, an inmate at the Illinois Department of Corrections ("IDOC"), commenced this action by filing a Complaint pursuant to 42 U.S.C. § 1983 for the deprivation of his constitutional rights regarding the inadequate treatment of his neurological condition. Along with the Complaint, Chencinski filed a motion for preliminary injunction, and the Court held a hearing regarding his requests for two crowns, a low gallery permit, and a low bunk permit. Following the hearing, the Court determined that Chencinski had not demonstrated that he would suffer immediate and irreparable injury without a preliminary injunction. Chencinski has filed a Motion for Reconsideration of the Court's Order denying his Motion for Preliminary Injunction (Doc. 61), Defendants filed a response (Docs. 64, 70), and Chencinski filed a reply brief (Doc. 66) and an Addition to the Motion for Reconsideration (Doc. 69).

Under Federal Rule of Civil Procedure 54(b), the Court may revise any order adjudicating fewer than all the claims at any time before the entry of judgment adjudicating

Page 1 of 6

all the claims and the rights and liabilities of all the parties. Motions to reconsider an order

under Rule 54(b) are judged largely by the same standards as motions to alter or amend a

judgment under Rule 59(e), "to correct manifest errors of law or fact or to present newly

discovered evidence." *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987)

(citation omitted). "Reconsideration is not an appropriate forum for rehashing previously

rejected arguments or arguing matters that could have been heard during the pendency of

the previous motion." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.,* 90 F.3d 1264, 1270

(7th Cir. 1996).

In his motion, Chencinski argues that key factors were overlooked by the Court: (1)

an eye specialist should have testified — a motion which the Court previously denied; (2) the

Court should have found it odd that Dr. Gentry, the optometrist at Pinckneyville Correctional

Center, did not testify for Defendants; (3) Dr. Myers gave false testimony at the injunction

hearing regarding examining Chencinski on May 23, 2019; and (4) the dentist, Dr. Chapman,

testified that he would have given Chencinski crowns if Wexford did not have a no crown

policy. He also states that he has a history of seizures, and seizures are on IDOC's list of

conditions that qualify for low bunk and low gallery permits. Defendants are aware he suffers

from seizures but have ignored this medical condition when considering his requests for the

permits. (Doc. 69, p. 1).

Defendants argue that Chencinski has not identified any manifest error in the Court's

reasoning or any change of the law to justify reconsideration, and instead, he only presents

arguments already raised. (Doc. 64, p. 3). Defendants state that they arranged for witnesses

to testify as to Chencinski's neurological condition, broken teeth, and need of low bunk and

low gallery permits, pursuant to the Court's Order, and that they did not have an obligation

to arrange a witness on his behalf. (*See* Doc. 47). In his reply, Chencinski states that if Defendants had notified him who would be testifying at the hearing, then he would have requested for Dr. Gentry to testify. He argues that the Court erred in not appointing him counsel to cross examine witnesses, call witnesses, and retrieve proper medical records, such as copies of past low bunk permits, and erred by not hearing from a specialist.

The Court does not find any manifest error of law or fact that would undermine its previous decision. Chencinski reiterates arguments that were presented at the hearing regarding (1) Dr. Myers's failure to give him an eye exam and properly assess him for low gallery and low bunk permits; and (2) Dr. Chapman's testimony that ideally Chencinski needs crowns but that crowns are not performed in IDOC. The Court considered all the evidence and found that as Chencinski continued to be regularly treated by medical and dental staff, was assigned a low bunk permit at the time of the hearing, and had his teeth repaired with fillings, Chencinski had not demonstrated how he would suffer irreparable harm if he were not granted a preliminary injunction prior to the conclusion of the case. The Court also previously considered his requests for testimony by an eye specialist and informed Chencinski that the Court will not appoint an expert to "testify on his behalf in order to establish a fundamental element of his case." (Doc. 50, p. 2) (quoting *Brown v. United States,* 74 F. App'x 611, 614-15 (7th Cir. 2004)). Finally, Chencinski's arguments regarding his seizures are not mentioned in his Complaint or Motion for Preliminary Injunction and were not raised at the hearing. Rule 54(b) is not appropriate for revisiting previously raised arguments or for making new arguments.

Chencinski's statement that the Court should have recruited him counsel also is not a compelling reason to amend the Court's ruling. *See United States v. Harris,* 531 F.3d 507, 513

(7th Cir. 2008) (district courts may reconsider previous rulings in the same ligation "if there is a compelling reason") (citations omitted). At the hearing, Chencinski cross examined witnesses and communicated clearly with the Court and opposing parties. Prior to the hearing, he had access to his medical records because they were served on him by Defendants under a HIPAA Protective Order and at the hearing, he informed that Court that he had low bunk and low gallery permits at Shawnee Correctional Center but still had not obtained copies. The Court further advised Chencinski two months before the hearing that he was able to call his own witnesses by filing a motion and submitting a list to the Court. (*See* Doc. 50). Although most *pro se* plaintiffs would benefit from recruitment of counsel, the Court found, and Chencinski at the hearing demonstrated, that he was competent to litigate the motion himself. (*Id.*). Accordingly, the motion for reconsideration is denied.

## MOTION TO APPOINT COUNSEL

In addition to his Motion for Reconsideration, Chencinski submitted a proposed order granting appointment for counsel and a document entitled "Support for Order for Appointment of Counsel." (Docs. 62, 67). He argues that he has already been prejudiced by the lack of counsel, as evident by the preliminary injunction hearing. He further states that his claims, which present complicated medical matters regarding his neurological condition, are sufficiently complex to warrant counsel. Chencinski claims that the difficulty of the case —depositions, interrogatories, discovery, etc.—factually and legally exceeds his capacity as a layperson.

The Court still finds that Chencinski is capable of litigating this case *pro se* at this stage in the case. *See Pruitt v. Mote,* 503 F.3d 647, 654 (7th Cir. 2007). As previously discussed, Chencinski demonstrated at the hearing that he could articulate his arguments to the Court

and question witnesses. While he states that discovery will be difficult, discovery on the merits has not yet commenced. In fact, because Defendants have raised Chencinski's failure to exhaust administrative remedies as an affirmative defense in their Answers to the Complaint, an order will be entered staying discovery on the merits until the Court resolves the question of whether he has exhausted his administrative remedies in accordance with the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). Because Chencinski continues to file coherent pleadings and motions and meet court imposed deadlines, the Court finds the case is not too difficult for Chencinski's capabilities at this point in time. Once discovery has commenced, if Chencinski has significant difficulty, he may refile his motion.

## NOTICE TO THE COURT

Finally, Chencinski has filed a document titled "Notice to the Court, Concerning Virus." (Doc. 71). He states that because of the COVID-19 pandemic he has not been allowed to go to the outside clinic in order to receive his injections to treat his neurological condition. When the conditions goes untreated, his daily activities are affected and he is at an increased risk of falls and accidents. Chencinski also makes allegations regarding his seizures and treatment by Dr. Myers. He states that he needs low gallery and low bunk permits at least until he is allowed to resume his injections at the outside clinic and asks the Court to temporarily grant his motion.

The Court construes the notice as a motion for a temporary restraining order. A temporary restraining order ("TRO") may issue without notice only if "specific facts in an affidavit or a verified complaint clearly show that immediate or irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." FED. R. CIV. P. 65(b)(1)(A). Such injunctive relief is warranted "to prevent a substantial risk of

serious injury from ripening into actual harm." *Farmer v. Brennan,* 511 U.S. 825, 845 (1994). Although Chencinski states he "can be moved to a top bunk anytime now[,]" the Court will not issue injunctive relief "based only on a possibility of irreparable harm[.]" *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). Because Chencinski currently is assigned to a bottom bunk and he has not asserted more than speculation that he may be moved, he has failed to set forth specific facts showing that immediate relief is necessary. Chencinski's request for a TRO is denied without prejudice.

## DISPOSITION

For the reasons stated above, the Motion for Reconsideration (Docs. 61, 69) and the Motion to Appoint Counsel (Docs. 62, 67) are **DENIED without prejudice.** The Notice to the Court (Doc. 71), which the Court construes as a motion for a temporary restraining order, is **DENIED without prejudice.**

**IT IS SO ORDERED.**

**DATED:   June 3, 2020**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**