IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROBERT CHENCINSKI, #B75433, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 19-cv-485-RJD |
| | ) |
| PERCY MYERS, M.D., WEXFORD HEALTH SOURCES, INC., SCOTT THOMPSON, and ILLINOIS DEPARTMENT OF CORRECTIONS, | ) |
| | ) |
| Defendants. | ) |

**ORDER**

**DALY, Magistrate Judge:**

This matter comes before the Court on the Motion for Summary Judgment for Failure to Exhaust Administrative Remedies in Count II by Defendant Wexford Health Sources, Inc. (Doc. 83 and 84). Plaintiff responded (Doc. 98). As explained further, Defendant's Motion is GRANTED.

**Background**

Plaintiff, an inmate of the IDOC, is incarcerated at Pinckneyville Correctional Center ("Pinckneyville"). He filed this suit pursuant to 42 U.S.C. §1983, alleging that Dr. Myers, Warden Scott Thompson (in his official capacity only), Wexford (a company that provides medical care to prisoners incarcerated within the IDOC) and IDOC violated his rights under the Eighth Amendment, the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101 *et seq.*, and the Rehabilitation Act, 29 U.S.C. §§794-94e.1. Plaintiff has blepharospasm, a chronic neurological condition involving involuntary muscle spasms around the eye, which causes Plaintiff chronic pain and problems with depth perception. He alleges that prior to arriving at Pinckneyville in

December 2018, he received Botox injections every 90 days as treatment for the spasms. Plaintiff saw Dr. Myers at Pinckneyville on January 31, 2019. Dr. Myers told him that he would be sent to a specialist outside of Pinckneyville on February 28, 2019, even though Plaintiff was due for a Botox injection on February 13, 2019. According to Plaintiff, this two-week delay occurred pursuant to a policy "to save money by sending two (2) inmates at the same time to the same outside specialist."

Dr. Myers also refused to give Plaintiff a low-gallery or bunk permit. Plaintiff then fell while climbing to a top bunk in late February and broke two of his teeth. Plaintiff saw a dentist on March 27, 2019, who told Plaintiff that while he needed crowns to fix his broken teeth, IDOC and Wexford do not provide crowns for inmates. After the Court's threshold review conducted pursuant to 28 U.S.C. §1915A, Plaintiff proceeded on the following claims:

> Count 1:   Eighth Amendment claim against Myers, Thompson, and Wexford for deliberate indifference to Plaintiff's blepharospasm, a serious medical need;
>
> Count 2:   Eighth Amendment claim against Wexford and Thompson for deliberate indifference to Plaintiff's serious dental needs;
>
> Count 3:   ADA and Rehabilitation Act claim against IDOC and Thompson for failure to provide Plaintiff a low-gallery and low-bunk permit.

Wexford now moves for summary judgment on Count II, contending that Plaintiff failed to exhaust his administrative remedies for this claim prior to filing suit. Wexford points to several grievances submitted by Plaintiff where he mentions the fall that led to his broken teeth, including two grievances dated February 24, 2019 and February 28, 2019. Doc. 84-1, p. 34-39. Those grievances do not refer to the Wexford crown policy, and according to Plaintiff's allegations, he did not learn about that policy until March 27, 2019. Wexford identifies several grievances submitted after Plaintiff filed his lawsuit on May 7, 2019, including Grievance #2608-08-19

dated August 12, 2019. *Id*., p. 14-17. In that grievance, Plaintiff explains that the dentist at Pinckneyville told him he needed crowns but per IDOC/Wexford policy, inmates do not receive crowns. *Id*., p. 16. Plaintiff submitted this grievance to his counselor and the grievance officer at Pinckneyville. *Id*. p. 15. The Warden denied the grievance, and Plaintiff appealed it to the Administrative Review Board ("ARB"). *Id*. p. 14-15.

In his Response, Plaintiff contends that his grievance dated February 28, 2019 serves to exhaust his administrative remedies for Count II because in that grievance he stated, "Wexford has a history of withholding or delaying medical care to save money." *Id*., p. 38. Moreover, Plaintiff argues, he filed a Motion for Leave to Amend his Complaint on August 27, 2020, after he fully exhausted Grievance #2608-08-19 (which identified the Wexford crown policy). Plaintiff contends that his amended complaint renders Defendant's Motion for Summary Judgment moot.

## Legal Standards

***Summary Judgment Standard***

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at

248). In considering a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

*Exhaustion Requirements*

Pursuant to 42 U.S.C. § 1997e(a), prisoners are required to exhaust available administrative remedies prior to filing lawsuits in federal court. "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002). "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). "[A]ll dismissals under § 1997e(a) should be without prejudice." *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004).

An inmate in the custody of the Illinois Department of Corrections must first submit a written grievance within 60 days after the discovery of the incident or problem to his or her institutional counselor, unless certain discrete issues are being grieved. 20 ILL. ADMIN. CODE § 504.810(a). The grievance must contain the following:

> …. factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 ILL. ADMIN. CODE § 504.870(b).

If the complaint is not resolved through a counselor, the grievance is considered by a Grievance Officer who must render a written recommendation to the Chief Administrative Officer

— usually the Warden — within 2 months of receipt, "when reasonably feasible under the circumstances." *Id*. §504.830(e). The CAO then advises the inmate of a decision on the grievance. *Id.*

An inmate may appeal the decision of the Chief Administrative Officer in writing within 30 days to the Administrative Review Board for a final decision. *Id.* § 504.850(a); *see also Dole v. Chandler*, 438 F.3d 804, 806–07 (7th Cir. 2006). The ARB will submit a written report of its findings and recommendations to the Director who shall review the same and make a final determination within 6 months of receipt of the appeal. 20 ILL. ADMIN. CODE § 504.850(d) and (e). Inmates who intend to file suit are required to follow all steps and instructions in the grievance process before filing with the Court in order to "[allow prisons] to address complaints about the program [they administer] before being subjected to suit, [reduce] litigation to the extent complaints are satisfactorily resolved, and [improve] litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007).

## Discussion

Plaintiff raises two legal arguments for the Court to consider.[1] First, he contends that his February 28, 2019 grievance suffices to exhaust his administrative remedies against Wexford in Count II because in it he stated "Wexford has a history of withholding or delaying medical care to save money." The Court disagrees. The February 28, 2019 grievance did not allow prison officials the opportunity to address Plaintiff's complaint about the crown policy. It does not mention that Plaintiff needed crowns-in fact, it does not mention crowns at all. Plaintiff did not

---

[1] To resolve a motion for summary judgment on the issue of exhaustion, the Court may hold a hearing on factual issues raised by either party. *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008). In this case, Plaintiff raised legal issues only in his Response to Wexford's motion. Accordingly, a hearing was not necessary.

learn about the Wexford crown policy until March 27, 2019.  The Illinois Administrative Code requires inmates to include as much detail as possible when submitting grievances.  Plaintiff certainly could not include detail about a policy of which he was not aware.

Next, Plaintiff argues that Wexford's motion is moot because he filed a Motion for Leave to Amend his Complaint on August 27, 2020.  This argument is not persuasive.  The PLRA does not permit a "sue first, exhaust later" approach.  *Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020).  Plaintiff fully exhausted Grievance #2608-08-19 (which identified the Wexford crown policy) prior to filing the Motion for Leave to Amend the Complaint.  When an inmate files an amended complaint that raises a new claim against a new defendant, the inmate may proceed if he exhausted his administrative remedies after filing his original complaint, but before he filed the amended complaint.  *Id.*  That is not the case here.  Plaintiff filed suit against Wexford for its crown policy (and other issues) on May 7, 2019.  Consequently, the PLRA required Plaintiff to exhaust his administrative remedies against Wexford for its crown policy before May 7, 2019.

## CONCLUSION

The Motion for Summary Judgment for Failure to Exhaust Administrative Remedies by Wexford Health Sources, Inc. (Docs. 83 and 84) is GRANTED.  Count II against Wexford is dismissed without prejudice.  The Clerk of Court is directed to enter judgment accordingly at the close of the case.

**IT IS SO ORDERED.**

**DATED:   March 12, 2021**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**