IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ROBERT CHENCINSKI, #B75433,            )
                                       )
            Plaintiff,                 )
                                       )
      v.                               )        Case No. 19-cv-485-RJD
                                       )
PERCY MYERS, M.D., WEXFORD             )
HEALTH SOURCES, INC., SCOTT            )
THOMPSON, and ILLINOIS                 )
DEPARTMENT OF CORRECTIONS,             )
                                       )
            Defendants.                )

**ORDER**

**DALY, Magistrate Judge:**

This matter comes before the Court on Plaintiff's renewed Motion for Injunctive Relief (Docs. 90 and 92) and Motion for Leave to Amend his Complaint (Doc. 93).   Defendants Percy Myers, M.D. and Wexford Health Sources, Inc. ("Wexford") filed a Response to the Motion for Injunctive Relief (Doc. 101) and Response to the Motion for Leave (Doc. 97).   Defendants Scott Thompson and the Illinois Department of Corrections ("IDOC") filed a response to the Motion for Injunctive Relief (Doc. 102).   Plaintiff replied to Defendants' Responses (Docs. 99 and 104).   As explained further, Plaintiff's renewed Motion for Injunctive Relief (Docs. 90 and 92) is DENIED. Plaintiff's Motion for Leave to Amend his Complaint is GRANTED IN PART AND DENIED IN PART.

**Background**

Plaintiff, an inmate of the IDOC, is incarcerated at Pinckneyville Correctional Center ("Pinckneyville").   He filed this suit pursuant to 42 U.S.C. §1983, alleging that Dr. Myers, Warden Scott Thompson (in his official capacity only), Wexford (a company that provides medical

care to prisoners incarcerated within the IDOC) and IDOC violated his rights under the Eighth Amendment, the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101 *et seq*., and the Rehabilitation Act, 29 U.S.C. §§794-94e.1.   Plaintiff has blepharospasm, a chronic neurological condition involving involuntary muscle spasms around the eye, which causes Plaintiff chronic pain and problems with depth perception.   He alleges that prior to arriving at Pinckneyville in December 2018, he received Botox injections every 90 days as treatment for the spasms.   Plaintiff saw Dr. Myers at Pinckneyville on January 31, 2019.   Dr. Myers told him that he would be sent to a specialist outside of Pinckneyville on February 28, 2019, even though Plaintiff was due for a Botox injection on February 13, 2019.   According to Plaintiff, this two-week delay occurred pursuant to a policy "to save money by sending two (2) inmates at the same time to the same outside specialist."

Dr. Myers also refused to give Plaintiff a low-gallery or bunk permit. Plaintiff then fell while climbing to a top bunk in late February and broke two of his teeth.   Plaintiff saw a dentist on March 27, 2019 who told Plaintiff that while he needed crowns to fix his broken teeth, IDOC and Wexford do not provide crowns for inmates.   After the Court's threshold review conducted pursuant to 28 U.S.C. §1915A, Plaintiff proceeded on the following claims:

| | |
|---|---|
| Count 1: | Eighth Amendment claim against Myers, Thompson, and Wexford for deliberate indifference to Plaintiff's blepharospasm, a serious medical need; |
| Count 2: | Eighth Amendment claim against Wexford and Thompson for deliberate indifference to Plaintiff's serious dental needs[1]; |
| Count 3: | ADA and Rehabilitation Act claim against IDOC and Thompson for failure to provide Plaintiff a low-gallery and low-bunk permit. |

---

[1]  The Court subsequently granted summary judgment in favor of Wexford on Count II for Plaintiff's failure to exhaust his administrative remedies prior to filing suit (Doc. 107).

Along with his Complaint, Plaintiff filed a Motion for Preliminary Injunction, asking the Court to Order Defendants to provide him with two crowns, a low gallery permit, and a low bunk permit.   The Court held a hearing on Plaintiff's motion on February 25, 2020.   Plaintiff, Dr. Myers, and a dentist at Pinckneyville testified. Dr. Myers testified that, based on his own observations of Plaintiff and Plaintiff's ophthalmology records, Plaintiff did not have a medical need for a low gallery permit or a low bunk permit.   The Court issued a decision on February 27, 2020 denying Plaintiff's motion, finding that Plaintiff failed to make a clear showing of immediate and irreparable injury that would result without a preliminary injunction.   On the date of the hearing, Plaintiff was assigned to a low bunk.   Plaintiff argued that he could, at any time, be reassigned to a top bunk and therefore he needed a low bunk permit.   The Court found that Plaintiff's argument that he could be reassigned to a top bunk at any time failed to articulate the specific or imminent threat to safety that is necessary for a preliminary injunction.   Moreover, Plaintiff was receiving regular dental and medical treatment at Pinckneyville.

Plaintiff then filed a Motion to Reconsider the Court's decision denying his Motion for Preliminary Injunction.   Plaintiff informed the Court that he had a history of seizures which, pursuant to a directive at Pinckneyville Correctional Center, entitled him to a low gallery/low bunk permit.   The Court denied Plaintiff's motion, finding there was no manifest error of law or fact that would undermine its previous decision, as Plaintiff had not previously argued that his seizures entitled him to a low gallery/bunk permit.

Plaintiff also filed a Notice that the Court construed as a Motion for Temporary Restraining Order.   In the Notice, he informed the Court that because of the COVID-19 pandemic, he could not go to the outside clinic for injections to treat his blepharospasm.   Therefore, Plaintiff concluded, he needed a low gallery and low bunk permit at least until he could resume his

Page **3** of **12**

injections at the outside clinic.   The Court again found that Plaintiff's argument that he could be reassigned to a top bunk at any time failed to establish that immediate relief is necessary.

**Plaintiff's Renewed Motion for Injunctive Relief**

Plaintiff again renews his request for the Court to order Defendants to issue him a low-bunk permit.   Plaintiff states that Wexford and IDOC are retaliating against him.   He informs the Court that Dr. Myers issued him a low-bunk permit effective June 16, 2020-July 28, 2020 related to his vision impairment, but Dr. Myers refused to renew the permit after it expired.   Plaintiff then explains he was assigned to a top bunk on August 2, 2020 and he fell, injuring his right knee and calf.   He saw multiple nurses on nurse sick call, but the nurses only gave him Ibuprofen and did not arrange for him to see Dr. Myers.   One nurse told him "you're just trying to get a bottom bunk."   Plaintiff concludes that "it is clear" Wexford and IDOC are retaliating against him.

Plaintiff then saw an optometrist on August 24, 2020 who recommended that Plaintiff receive a low bunk permit.   Plaintiff saw Dr. Myers two days later, and Dr. Myers refused to read or acknowledge the optometrist's note.   Then, on August 29, 2020 a "vein broke" in Plaintiff's right ankle, and he "lost a lot of blood."   Dr. Myers still refused to issue Plaintiff a low bunk permit.   Plaintiff contends that Dr. Myers is "not making medical decisions, he is retaliating" and asks the Court to award him low gallery and low bunk permits until this case is resolved.

Defendants Wexford and Dr. Myers responded to the renewed motion and attached Plaintiff's medical records to their Response.   Consistent with statements made by Plaintiff in his renewed Motion, there is a record dated June 16, 2020 that states "low bunk x 6 weeks."   Doc. 101-1, p. 1.   Also consistent with Plaintiff's Motion, there is a record from an optometrist dated August 24, 2020 that states "needs low bunk due to safety issues with no depth perception."   Doc. 101-1, p. 39.   There is a record from Pinckneyville Community Hospital referencing an

emergency room visit Plaintiff made on August 29, 2020 for "bleeding varicose vein right lower left leg pigmentary lesion to be ruled out for malignancy." Doc. 101-1, p. 38. There is also a three-page note dated September 2, 2020 from Dr. Myers discussing Plaintiff's emergency room visit and the optometrist's recommendation for a low bunk permit. Doc. 101-1, p. 31-33.

A motion for preliminary injunctive relief is granted where the movant establishes the following: 1) the underlying case has some likelihood of success on the merits; 2) no adequate remedy at law exists; 3) without the injunction, the litigant will suffer irreparable harm prior to final resolution of the case. *Valencia v. City of Springfield, Illinois*, 883 F.3d 959, 965 (7th Cir. 2018). If the movant successfully establishes these elements, then the Court balances the irreparable harm to the movant against any irreparable harm the opposing party would face if the motion were granted. *Id*. at 966. The balance is a "sliding scale approach: '[t]he more likely the plaintiff is to win, the less heavily need the balance of harms weighs in his favor.'" *Id*. (internal citations omitted). The injunctive relief cannot be granted if it is not "of the same character sought in the underlying suit, and deals with a matter presented in that underlying suit." *Devose v. Harrington*, 42 F.3d 470, 471 (8th Cir. 1994 (*per curiam*).

While Plaintiff's renewed Motion for Preliminary Injunctions asks the Court to order Defendants to issue him a low bunk permit (as he previously did in both his original complaint and prior motions for injunctive relief), Plaintiff is now alleging that Defendants and non-party Wexford nurses are retaliating against him. Plaintiff's Complaint alleges that Defendants Myers, Thompson, and Wexford are deliberately indifferent to him and that IDOC is liable under the ADA and the Rehabilitation Act. To succeed on a retaliation claim, Plaintiff would have to establish that "1) 'he engaged in an activity protected by the First Amendment; 2) he suffered a deprivation that would likely deter First Amendment activity in the future'; and 3) a causal connection between

the two." *Watkins v. Kasper*, 599 F.3d 791, 794 (7th Cir. 2014).   Because Plaintiff has not filed

a retaliation claim against Defendants and the nurses, the Court cannot weigh the likelihood of his

success on the merits.[2]   Accordingly, Plaintiff's renewed Motion for Preliminary Injunctive Relief

(Docs. 90 and 92) is DENIED.

**Plaintiff's Motion for Leave to Amend His Complaint**

Counts One and Three of Plaintiff's proposed amended complaint contain new allegations,

and Plaintiff attempts to resurrect his claim against Wexford in Count Two.   Plaintiff also alleges

three new claims against Dr. Myers:

| | | |
|---|---|---|
| Count 4: | Eighth Amendment claim against Dr. Myers for deliberate indifference to Plaintiff's history of seizures; | |
| Count 5: | Eighth Amendment claim against Dr. Myers for deliberate indifference to Plaintiff's spider bite; | |
| Count 6 | Eighth Amendment claim against Dr. Myers for deliberate indifference to Plaintiff's blisters that developed as a reaction to antiobiotic treatment for the spider bite. | |

Any other claim that is mentioned in the proposed amended complaint but not addressed in this

Order should be considered dismissed without prejudice as inadequately pled.   *See Bell Atlantic

v. Twombly*, 550 U.S. 544, 570 (2007) (a claim must state "enough facts" to be "plausible on its

face").

## Discussion

Federal Rule of Civil Procedure 15(a) provides that a party may amend a pleading and that

leave to amend should be freely given "when justice so requires."   The Seventh Circuit maintains

---

[2]  Plaintiff's proposed amended complaint likewise does not allege retaliation by Defendants or non-party nurses.

a liberal attitude toward the amendment of pleadings "so that cases may be decided on the merits and not on the basis of technicalities." *Stern v. U.S. Gypsum, Inc.*, 547 F.2d 1329, 1334 (7th Cir. 1977).   A *pro se* plaintiff is held to "less stringent pleading standards" than a party represented by counsel. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).   A court may, however, deny the plaintiff leave to amend if his claim is futile. *Townsend v. Fuchs*, 522 F.3d 765, 775 (7th Cir. 2008). Leave may also be denied where the plaintiff caused undue delay or had a dilatory motive. *Guise v. BMW Mortgage, LLC*, 377 F.3d 795, 801 (7th Cir. 2004).   Here, there appears to be no delay or dilatory motive, so the only question for the Court to determine is whether the claims in Plaintiff's proposed amended complaint are futile.

To state an Eighth Amendment claim for deliberate indifference to a serious medical condition, the plaintiff must allege that "(1) that he suffered from an objectively serious medical condition; and (2) that the individual defendant was deliberately indifferent to that condition." *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010).   Whether a delay in treatment amounts to deliberate indifference depends on "the seriousness of the condition and the ease of providing treatment." *McGowan v. Hulick*, 612 F.3d 636, 641 (7th Cir. 2010).   An entity like Wexford can be liable for deliberate indifference if it "maintained an unconstitutional policy or custom" that caused the plaintiff's injury. *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1035 (7th Cir. 2018).

### Count 1

Plaintiff now alleges that Wexford has a policy of "condoning lengthy wait times scheduled by outside providers" and refuses to look for other providers who can provide quicker appointments at a higher cost for necessary treatment.   As a result, Plaintiff's Botox injections are delayed.   The Court finds that these allegations (in addition to the allegation that Wexford delays

necessary treatment at outside providers until two inmates need appointments with that provider) sufficiently state a claim for deliberate indifference against Wexford.

Plaintiff also includes new allegations against Dr. Myers for his alleged deliberate indifference to Plaintiff's blepharospasm.   Plaintiff told Dr. Myers about his condition and asked Dr. Myers to obtain his prior medical records, but Dr. Myers failed to do so.   When Plaintiff went for his injections in February 2019, he did not receive the proper dosage because the outside provider did not have Plaintiff's medical records.   Dr. Myers also disregarded an optometrist's recommendation for Plaintiff to receive a low bunk permit.   The Court recognizes that a doctor is not deliberately indifferent simply because another medical professional disagrees with the doctor on a course of treatment.   *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).   However, after considering all of Plaintiff's allegations against Dr. Myers in Count One (including the allegations that Dr. Myers delayed Plaintiff's Botox treatment for two weeks in February 2019), the Court finds that Count One in the amended complaint adequately states a claim for deliberate indifference against Dr. Myers.

## Count 2

In Count Two, Plaintiff alleges that he learned on March 27, 2019 that he could not receive crowns for his broken teeth, pursuant to a Wexford dental policy.   The Court previously granted summary judgment to Wexford on Count Two for Plaintiff's failure to exhaust his administrative remedies.   Plaintiff attempts to resurrect his claim against Wexford in the amended complaint by pointing to a grievance that he submitted on August 12, 2019.   That grievance was discussed in the Court's order granting summary judgment in favor of Wexford in Count Two. Plaintiff filed this lawsuit on August 7, 2019.   Prior to filing a §1983 civil rights lawsuit regarding prison conditions, an incarcerated plaintiff must fully exhaust his administrative remedies.   42 U.S.C. §

1997e(a).   The PLRA does not permit a "sue first, exhaust later" approach.   *Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020).[3]   Because Plaintiff submitted the August 12, 2019 grievance after he filed this lawsuit, he failed to exhaust his administrative remedies regarding Wexford in Count Two and this claim in the proposed amended complaint is therefore futile.   Plaintiff's request for leave to file an amended Count Two against Wexford in this matter is denied.   Count II still proceeds against Defendant Thompson in his official capacity only.

### Count 3

Plaintiff alleges that IDOC and Thompson violate the ADA and the Rehabilitation Act by failing to provide him a low bunk permit because of his seizures and blepharospasm.   Title II of the ADA and the RA are functionally identical, and courts often construe them as a single claim. *See Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 671 (7th Cir. 2012).   Such claims are proper only against an agency or its director in his/her official capacity.   *Id*. at 670.   To prevail on a Title II ADA claim, the plaintiff must establish (1) "he is a 'qualified individual with a disability'"; (2) "he was denied 'the benefits of the services, programs, or activities of a public entity' or otherwise subject to a discrimination by such an entity"; and 3) "the denial or discrimination was 'by reason of his disability.'"   *Lacy v. Cook Cty.*, 897 F.3d 847, 853 (7th Cir. 2018).   Discrimination can be established by showing the defendant failed to make reasonable modifications for the plaintiff's disability.   *Id*.   Plaintiff alleges that he is disabled by virtue of his seizures and blepharospasm, and that IDOC fails to reasonably accommodate his disabilities by providing him with a low bunk

---

[3] There is an exception to this rule- when an inmate files an amended complaint that raises a new claim against a new defendant, the inmate may proceed if he exhausted his administrative remedies after filing his original complaint, but before he filed the amended complaint.   *Id*.   That is not the case here.   Plaintiff alleges that he learned about Wexford's crown policy in March 2019.   Then he filed suit in May 2019 and submitted a grievance regarding the crown policy in August 2019.

permit.   Count Three of Plaintiff's amended complaint will proceed against IDOC and Thompson.

### Count 4

Plaintiff alleges that Dr. Myers was deliberately indifferent to a spider bite that he received in mid-June 2020.   By June 20, 2020, there was a purple and black circle on Plaintiff's left ankle. Plaintiff saw Dr. Myers on June 23, 2020, and Dr. Myers said that he would order antibiotics after Plaintiff told Dr. Myers he had previously taken amoxicillin and penicillin.   Plaintiff saw a nurse on June 30, 2020 because he still had not received any antibiotics.   The nurse referred Plaintiff to Dr. Myers.   Dr. Myers saw Plaintiff on July 2, 2020 and explained to Plaintiff that he had not ordered antibiotics for Plaintiff because Plaintiff's leg "wasn't that swollen."   By this point, there were open, draining sores on Plaintiff's leg.   His leg was also discolored and three times its normal size.   Dr. Myers ordered a sulfa-containing antibiotic, to which Plaintiff had an allergic reaction.

To the extent that Plaintiff claims Dr. Myers was deliberately indifferent by prescribing a sulfa-containing antibiotic, Plaintiff's request for leave to add this claim to his case is denied. None of Plaintiff's allegations in the amended complaint suggest Dr. Myers had any reason to suspect Plaintiff was allergic to sulfa.   However, under the less stringent pleadings standards applicable to Plaintiff's *pro se* filings, Count Four sufficiently states a claim against Dr. Myers for failing to prescribe an antibiotic to Plaintiff on June 23, 2020.

### Count 5

Plaintiff 's allergic reaction to sulfa caused him to develop severe blisters and swelling on his hands, ankles, penis, and scrotum.   He received Benadryl and steroid injections from the health care unit on July 6, 2020.   Dr. Myers saw Plaintiff on July 7, 2020.   He refused to look at Plaintiff's penis, and he refused to give Plaintiff any medication or ointment, stating "you just need to heal."   Dr. Myers also refused to give him a low bunk permit or a no-shoe permit while his

blisters healed.   Some of the skin on Plaintiff's penis started to turn black and gray.   On July 11, 2020, Plaintiff saw a nurse who viewed the blisters on Plaintiff's hands, ankles, and penis.   The nurse said she would arrange for Plaintiff to see a doctor and she would send him some ointment.   Plaintiff saw a nurse practitioner on July 13, 2020, who prescribed an antibiotic.   Plaintiff's blisters took months to heal, and he will have scars.   On these allegations, the Court finds that Plaintiff plausibly claims that Dr. Myers was deliberately indifferent to Plaintiff's blisters, and therefore Count Five proceeds against Dr. Myers.

### Count 6

Plaintiff alleges that Dr. Myers refused to obtain Plaintiff's medical records from Pontiac Correctional Center, which show that Plaintiff had a low bunk permit for seizures.   Plaintiff subsequently suffered multiple seizures at Pinckneyville.   His first was on June 18, 2019.   One of the nurses falsified Plaintiff's medical records, so the records do not reflect that he had a seizure.[4]   Plaintiff contends that by failing to issue him a low bunk permit, Dr. Myers is deliberately indifferent to his risk of seizures.   These allegations adequately meet the standard for deliberate indifference.   Count Six proceeds against Dr. Myers.

### CONCLUSION

For the foregoing reasons, Plaintiff's renewed Motion for Preliminary Injunctive Relief is DENIED.   Plaintiff's Motion for Leave to File Amended Complaint is GRANTED IN PART AND DENIED IN PART.   Plaintiff's Amended Complaint supersedes the original complaint and controls the case from this point forward.   *Massey v. Helman*, 196 F.3d 727, 735, (7th Cir. 1999).

---

[4] To the extent Plaintiff is seeking to add this nurse as a defendant, he did not name the nurse in the caption and the nurse will therefore not be treated as a defendant in this matter. *See Myles v. United States*, 416 F.3d 551, 551-52, (7th Cir. 2005).

Plaintiff's Amended Complaint proceeds as follows:

Count 1:    Eighth Amendment claim against Myers and Wexford for deliberate indifference to Plaintiff's blepharospasm, a serious medical need;

Count 2:    Eighth Amendment claim against Thompson for deliberate indifference to Plaintiff's serious dental needs;

Count 3:    ADA and Rehabilitation Act claim against Thompson and IDOC for failure to provide Plaintiff a low-gallery and low-bunk permit.

Count 4:    Eighth Amendment claim against Myers for deliberate indifference to Plaintiff's spider bite on June 23, 2020;

Count 5:    Eighth Amendment claim against Myers for deliberate indifference to Plaintiff's blisters that resulted from his allergic reaction to sulfa;

Count 6:    Eighth Amendment claim against Myers for deliberate indifference to Plaintiff's seizures, a serious medical need.

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by the Court.

**IT IS SO ORDERED.**

**DATED:   March 12, 2021**

s/ *Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**